IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WILLIAM F. SKIDMORE,

        Plaintiff,

v.                                        Civil Action No. 02CV92

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

## MEMORANDUM, OPINION, and REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction

A.    Background

Plaintiff, William W. Skidmore, (Claimant), filed his Complaint on December 10, 2002 seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed her Answer on September 1, 2004.[2] Claimant filed his Motion for Summary Judgment and Brief in Support Thereof on November 4, 2004.[3] Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on November 3, 2004.[4] Commissioner filed her Supplemental Memorandum on March 28, 2005.[5]

B.    The Pleadings

---

[1] Docket No. 1.

[2] Docket No. 12

[3] Docket Nos. 16 and 17.

[4] Docket Nos. 14 and 15.

[5] Docket No. 20.

1. Claimant's Motion for Summary Judgment and Brief in Support Thereof.[6]

2. Commissioner's Motion for Summary Judgment and Brief in Support Thereof.[7]

C. Recommendation

1. I recommend that Claimant's Motion for Summary Judgment be DENIED and that Commissioner's Motion for Summary Judgment be GRANTED. The ALJ was substantially justified in his decision. Specifically, the ALJ properly discounted Dr. Hall's opinion. Also, the ALJ properly determined Claimant's credibility. In addition, the ALJ was not required to re-contact any medical source.

## II. Facts

A. Procedural History

On August 13, 2001 Claimant filed for Disability Insurance Benefits (DIB) and Social Security Income (SSI) payments alleging disability since August 8, 2000. The application was denied initially and on reconsideration. A hearing was held on July 19, 2002 before an ALJ. The ALJ's decision dated September 11, 2002 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on November 4, 2002. This action was filed and proceeded as set forth above.

B. Personal History

Claimant was 60 years old on the date of the July 19, 2002 hearing before the ALJ. Claimant has a Ninth grade education and past relevant work experience as a maintenance worker and a

---

[6] Docket Nos. 13 and 14.

[7] Docket Nos. 17 and 18.

construction worker.

C.      Medical History

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability August 8, 2000 - September 11, 2002:

**Davis Memorial Hospital, 8/19/97, Tr. 115**
- Muscular low back strain;
- Strain of left rotator cuff;
- Bright red blood per rectum of unknown etiology, probable hemorrhoid.

**8/19/97, Tr. 119**
**KUB FULL RESULT.** No radiopaque [illegible] is seen, except calculi in the region of prostate. Bowel gas pattern is non-specific.

**Dr. Sabio, M.D., 10/4/01, Tr. 126**
- Tinea unguium, both hands.
- Alcohol abuse.

**Physical Residual Functional Capacity Assessment, Dr. Brown, M.D. 10/17/01, Tr. 128**
PRIMARY DIAGNOSIS:            Tinea unguium fingernails.
EXERTIONAL LIMITATIONS:       None established.
POSTURAL LIMITATIONS:         None established.
MANIPULATIVE LIMITATIONS:     None established.
VISUAL LIMITATIONS:           None established.
COMMUNICATIVE LIMITATIONS:    None established.
ENVIRONMENTAL LIMITATIONS:    None established.

**Physical Residual Functional Capacity Assessment, 2/1/02, Tr. 136-143**
PRIMARY DIAGNOSIS:            Hand pain syndrome.
EXERTIONAL LIMITATIONS:       None established.
POSTURAL LIMITATIONS:         None established.
MANIPULATIVE LIMITATIONS:     None established.
VISUAL LIMITATIONS:           None established.
COMMUNICATIVE LIMITATIONS:    None established.
ENVIRONMENTAL LIMITATIONS:    None established.

**Psychological Evaluation, Dr. Hall, M.A., 6/28/02, Tr. 144-149**
- 38 years alcohol abuse, 12-24 beers 7 days a week.
- I.Q.    V. 71         P. 70          FS 68
AXIS I:      Alcohol Dependence in Early Full Remission (per self report) 303.90 Anxiety

Disorder NOS 300.00. Rule Out Alcohol-Induced Anxiety Disorder with Onset During Withdrawal
AXIS II:   Mental Retardation, Mild 317
AXIS III:  Chronic and diffuse joint pain per report.

**Mental Impairment Questionnaire**
**Dr. Hall, M.A., 9/2/02, Tr. 149-151**
SLIGHTLY LIMITED:    11 of 20 categories.
MODERATELY LIMITED:  5 of 20 categories.
MARKEDLY LIMITED:    4 of 20 categories

**Psychiatric Review Technique**
**Dr. Hall, M.A., 6/28/02, Tr. 152 -**
Mental Retardation - full scale - I.Q. of 60-70.
Anxiety Disorder, NOS.
B Criteria: moderate restrictions, daily living, Slight difficulties social functioning and maintaining concentration. No repeated episodes of decompensation.

D.   Testimonial Evidence

1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 178-81, 186):

Q    I would like you to show Judge Levine your hands, so he can see them. Can we put on the record that they are fairly deformed at the ends and pretty swollen? Would that be a fair assessment of them?

ALJ  Well, I don't know if they're deformed. They appear to be somewhat swollen. The fingernails seem to be yellow and thickening. That's how I would describe the hands.

ATTY Okay. That's - - just so we have a description of them. I think that's important.

BY ATTORNEY:

Q    How do they bother you?

A    Oh, they ache. I get up in the morning and they hurt.

4

Q How bad do they hurt?

A I can't hardly shut them.

Q Do you have to work them to get them moving?

A Yeah, I soak them in warm water.

Q Do you have to do that every morning?

A Um-hum.

Q How long do you have to do that?

A Oh, 15 to 20 minutes.

*     *     *

Q Are you ever free of pain in your hands?

A No.

Q Do you drop things?

A Yeah, I've dropped a few things.

Q What kind of things?

A You know, getting something out of the fridge or something like that, sodas and stuff, milk. I have dropped a few things.

Q Do you try as hard as you can?

A Yeah.

Q Now you said you also have pain in your shoulders and your hips and legs, is that right?

A Now that's worse because of my joints.

Q In your left leg most?

A      No, both of them.

*      *      *

Q      So what was the condition of your hands at that time?

A      They was bad. They was bleeding. My hands were busted open and they were bleeding, and I just couldn't stand it no more. I couldn't touch anything. I just quit.

Q      Do you feel that it's your hands primarily that are preventing you from working?

A      My hands and my legs hurt bad.

Q      Where at in your legs?

A      Right in my joints.

Q      In your knees?

A      Yeah.

### 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 193-96):

Q      Okay. All right. Assume hypothetical individual of the Claimant's age, education, work experience. Assume the person's restricted to a medium range of work, entry-level work, retain repetitive tasks. This person has an eighth grade education, but can not read or write. He has to avoid extreme cold or if his hands are unprotected, they have to avoid extreme cold, which I guess means he needs to wear gloves in the cold weather. And he needs to avoid dangerous machinery. He also needs to avoid a situation where he would have to continuously grip with his hands of objects weighing more than 25 pounds. In other words, he could lift 25 pounds, but he would have to avoid continuous gripping at that weight or about. Is there work in

the national and regional economy that such a person could perform?

A    Okay. So basically what we have - - this is just for my own clarification, Your Honor. We're basically saying that as long as he avoids the extreme cold, he could use his hands in any other environment?

Q    Yes.

A    Okay.

Q    He could use his hands in a cold environment, also, with gloves on unless the job requires fine dexterity skills that would require not being able to use gloves, then that would preclude him from work.

A    Absolutely, and also I'm looking at the continuous gripping.

Q    I didn't hear that.

A    I'm also looking at avoiding continuous gripping as something also to factor with that. Work as a vehicle washer, it's a medium exertional level. It is at the L1 level. There's also a specific vocational preparation of 1.

HA    Do you have any numbers with those?

VE    Yes, I do. I just wanted to check one other thing to make sure I'm being consistent with the hypothetical. Okay. The numbers for that is 300,000 nationally, and regionally, you're looking at 1,500. Work as a route driver helper. It's a medium exertional. It's at unskilled, SVP 2. 70,000 at the national level, 900 with the regional. Work as a machine presser. It's medium exertional, unskilled at SVP 2. You have 85,000 nationally, 1,000 regionally. Wire galvanizer. It's a medium exertional. It is unskilled at SVP 2. You have 45,000 with the national. You have 200 with the regional. And that's a sampling, Your Honor.

Q      What was the region?

A      The State of West Virginia, sir.

Q      And are those jobs consistent with the DOT?

A      Yes, they are.

Q      Okay. Assume a hypothetical individual the Claimant's age, education, and work experience. Assume he is restricted to a light range of work, the same restrictions as above. Is there work that such a person could perform?

A      Biker fill mounter [phonetic], it's a light exertional. It's unskilled at SVP 2. 65,000 with the national, 950 with the regional. Automatic vending machine tenderer. It's light, unskilled, and SVP 2. 45,000 nationally, 200 regionally.

HA    Was that 45,000?

VE    Yes.

A      Cleaner/polisher. It's light. It's SVP 2. 95,000 for the national, 1,000 for the region. And that's a sample, Your Honor.

Q      All rights. Are those jobs consistent with the DOT?

A      Yes, they are, Your Honor.

E.    <u>Lifestyle Evidence</u>

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

- Able to lift twenty to twenty-five pounds. (Tr. 180).

- Weeds the garden, mows the lawn. (Tr. 181, 184).

- Takes walks to visit family members. (Tr. 184).

- Watches television. (Tr. 188).

- Had an alcohol problem. (Tr. 126, 144-49).

## II. The Motions for Summary Judgment

A.  Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ erred when he ignored Dr. Hall's residual functional capacity assessment. Also, Claimant maintains that the ALJ failed to properly determine Claimant's credibility. In addition, Claimant asserts that the ALJ failed to re-contact a medical source.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ properly discounted Dr. Hall's opinion. Also, Commissioner asserts that the ALJ properly determined Claimant's credibility. In addition, Commissioner contends that the ALJ was not required to re-contact any medical source.

B.  The Standards.

1. Summary Judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations

or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

  2. Judicial Review.  Only a final determination of the Commissioner may receive judicial review.  See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

  3. Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy.  42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

  4. Social Security - Medically Determinable Impairment.  The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques.  42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

  5. Disability Prior to Expiration of Insured Status- Burden.  In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.  Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

  6. Social Security - Standard of Review.  It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.  The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.  Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

  7. Social Security - Scope of Review - Weight Given to Relevant Evidence.  The Court must

address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. Social Security - Sequential Analysis. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

10. Social Security - Non-treating physician. It is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in the evidence. Hayes, 907 F.2d at 1456. The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment

for that of the Commissioner. Id.

    11.   Social Security - Claimant's Credibility. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 889 (4th Cir. 1984) citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976). "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference. See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997). We will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) citing Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990).

C.     Discussion

### 1. Non-Treating Psychologist

Claimant asserts that the ALJ erred when he ignored Dr. Hall's residual functional capacity assessment. Commissioner counters that the ALJ properly discounted Dr. Hall's opinion.

It is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in the evidence. Hayes, 907 F.2d at 1456. The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Commissioner. Id.

Dr. Hall is not a treating physician. Dr. Hall examined the Claimant on referral from Claimant's counsel. The ALJ found that Dr. Hall's "mental assessment is inconsistent with his own written evaluation of the claimant's mental status. [Dr. Hall] has no longitudinal treating relationship with the claimant nor has there been a history of psychological problems, treatment, counseling or

drug therapy. The doctor concluded that the claimant is mildly retarded. However, the claimant has worked for many years as a bricklayer and maintenance person, both of which are classified as semi-skilled work as per testimony of the vocational expert." (Tr. 17). Dr. Hall's treatment notes state "[claimant] was pleasant in demeanor. Posture and gait were normal and there was no unusual mannerisms or gestures. There was no evidence of psychomotor agitation or retardation. Speech was normal in spontaneity, rate, and volume. Stream of thought was adequately integrated and goal directed. Content was negative for delusional material or evidence of psychosis. He was alert and oriented to all spheres. Immediate memory was normal with word recall 4/4. Short-term memory was mildly deficient with word recall 2/4 after thirty minutes. Concentration, persistence, and pace were normal based on observation during testing procedures." (Tr. 147). Also, Dr. Khan reported that Claimant's psychiatric examination was normal. (Tr. 120). In addition, Claimant reported that he has no problem concentrating, completing tasks or activities, following instruction, or getting along with other people. (Tr. 91). Therefore, the ALJ properly discounted Dr. Hall's opinion.

## 2. Credibility

Claimant asserts that the ALJ erred when he found claimant not totally credible. Commissioner counters that the ALJ properly determined that Claimant was not entirely credible.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 889 (4th Cir. 1984) citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976). "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference. See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997). We will reverse an ALJ's credibility determination

13

only if the claimant can show it was 'patently wrong'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) citing Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990).

The ALJ stated "claimant alleges inability to work as of August 8, 2000, due to severe pain and swelling in the hands. The claimant alleges that his hand condition is further aggravated by cold weather. The claimant alleges inability to do or pick up anything. However, the undersigned does not find the claimant's allegations of his hand condition credible to the degree he alleges." The ALJ noted that the medical evidence does not show a complaint of a hand condition until ten days after Claimant filed his application. Also, a general examination showed no evidence of any orthopedic or neurological abnormalities. (Tr. 16). Claimant asserts that he did not seek medical treatment because he did not have the money. (Tr. 108). However, the ALJ points out that claimant demonstrated that in the past he knew where to seek and obtain medical treatment with limited funds when he sought medical attention for other ailments in 1990 and 1997 (Tr. 16, 114-15). In addition, a disability examination "revealed the claimant has tenderness, swelling and redness in the distal phalanges of both hands around the fingernails. The claimant's fingernails were thick, pale and brittle. The claimant was diagnosed with tinea ungiuim, both hands. However, the claimant had a handgrip of 2KFG, which was considered a suboptimal effort and 5/5 bilateral upper strength." (Tr. 16). The ALJ also took into account that the record reflects that the Claimant has worked and earned a living for several years as a construction worker and maintenance man. Also, Claimant testified that he worked as a maintenance worker after his alleged onset date and well as five years prior. (Tr. 16). In addition, the ALJ noted that Claimant alleges that his hand condition is aggravated by cold weather, yet claimant worked during ski season. (Tr. 16). The ALJ is in the best position to determine Claimant's credibility, Claimant has not demonstrated that the ALJ was patently wrong.

Therefore, the ALJ properly determined Claimant's credibility.

### 3. Recontact a Medical Source

Claimant asserts that the ALJ should have re-contacted a medical source. Commissioner counters that the Claimant does not specify which medical source should have been re-contacted and regardless, the ALJ had sufficient evidence to make a disability determination.

Commissioner is correct. The Claimant does not state which medical source needed to be recontacted because of an inadequate report. The ALJ had sufficient evidence to make a disability determination and, therefore, was not required to re-contact any of the medical sources of record. Specifically, the evidence of record included the consultative report of Dr. Sabio, the psychological evaluation of Dr. Hall, the medical report of Dr. Kahn, reports from two state agency physicians, Claimant's testimony, Claimant's activities questionnaires, and Claimant's work history. Therefore, the ALJ was not required to re-contact any medical source.

## IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and that Commissioner's Motion for Summary Judgment be GRANTED. The ALJ was substantially justified in his decision. Specifically, the ALJ properly discounted Dr. Hall's opinion. Also, the ALJ properly determined Claimant's credibility. In addition, the ALJ was not required to re-contact any medical source.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted

to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: June 7, 2005

<u>James E. Seibert</u>

JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE